# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

APP LIQUIDATING COMPANY,
f/k/a AMERICAN PAPER AND
PACKAGING CORP., MICHAEL S.
POLSKY, RECEIVER,

        Plaintiff,

v.                                            Case No. 05-C-846

PACKAGING CREDIT COMPANY, LLC,

        Defendant.

## DECISION AND ORDER

On April 28, 2004, APP Liquidating Company ("APP") filed an Assignment for the Benefit of Creditors pursuant to Chapter 128 of the Wisconsin Statutes in Milwaukee County Circuit Court. On that same date, the Milwaukee County Circuit Court appointed Michael S. Polsky as the Receiver (the "Receiver") over all the assets of APP. Pursuant to Wisconsin Statute § 128.07, the Receiver subsequently filed a lawsuit in Milwaukee County Circuit Court against Packaging Credit Company, LLC ("PCC"). In its lawsuit, the Receiver seeks to recover APP's alleged preferential transfer to PCC in the amount of $90,591.27.

PCC filed a Notice of Removal based on this Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). PCC then filed a motion to dismiss the Receiver's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. PCC alleges that Wisconsin Statute §

128.07, which empowers the Receiver to recover a preferential transfer, is preempted by the Federal Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

**DISCUSSION**

The sole question for the Court to decide is whether Wisconsin Statute § 128.07 is preempted by federal law.[1] The federal preemption doctrine is derived from the Supremacy Clause of Article VI of the United States Constitution, which provides that the Constitution and the laws made pursuant to it are the supreme law of the land. Accordingly, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988).

Congress's command to preempt a state law can either be explicit or implicit in a federal law. *Gade v. Nat'l Solid Waste Manag. Assoc.*, 505 U.S. 88, 98 (1992). Absent explicit language, there are two types of "implied preemption." *Id.* There is "field preemption," where the "'scheme of federal regulation is so pervasive as to make reasonable the inference that Congress has left no room for the States to supplement it,'" *Id.* (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)), and "conflict

---

[1] The relevant portion of the statute provides:

If the debtor has given a preference within 4 months before the filing of a petition, or an assignment, after the filing of the petition and before the appointment of a receiver . . . and the recipient has reasonable cause to believe that the enforcement of the judgment or transfer would effect a preference, the judgment shall be voidable by the receiver or assignee, and the receiver or assignee may recover the property or its value from the recipient.

Wis. Stat. § 128.07(2)

2

preemption," where compliance with both federal and state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Gade* 505 U.S. at 98 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The Wisconsin statute at issue in this case is a voluntary assignment for the benefit of creditors, which has its origins in the common law right to dispose of one's private property as one sees fit. *Pobreslo v. Boyd*, 287 U.S. 518, 524 (1933) ("the right to make a voluntary assignment for the benefit of creditors is a personal right inherent in the ownership of property, and existed at common law independent of the [bankruptycy] statute.") An assignment for the benefit of creditors works much like a bankruptcy proceeding. A debtor may convey his assets to a receiver or an assignee in trust for the purpose of liquidating the debtor's assets and equitably distributing the proceeds to creditors. Unlike bankruptcy law, though, Wisconsin's voluntary assignment law does not discharge any outstanding debt the debtor may owe.

Wisconsin Statute § 128.07 enables an assignee or receiver to recover preference payments. A preference payment occurs if: (a) a payment was made that occurred within four months of the filing of the Chapter 128 petition, (b) the debtor was insolvent at the time of the payment, (c) the payment was on account of an antecedent debt, and (d) the payment enabled the recipient to obtain a greater percentage of its debt than other creditors in the same class. Wis. Stat. § 128.07. PCC argues that this preference provision is unenforceable because it is preempted by the federal bankruptcy code.

3

Indeed, the Ninth Circuit, in *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2004), recently struck down an almost identical preference provision in California law. The Ninth Circuit explained that federal bankruptcy law serves two purposes: (1) to give an individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) to equitably distribute a debtor's assets among competing creditors. *Id*. at 1203. The court in *Sherwood* reiterated previous Supreme Court precedent that held that if a voluntary assignment law performed the first of these functions, by giving debtors a discharge of their debts, federal law would preempt the voluntary assignment law. *See id*. (citing *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265-66 (1929); *Pobreslo*, 287 U.S. at 525). The Ninth Circuit concluded the same was true of state statutes that "implicate" the second goal of federal bankruptcy law as well, namely equitable distribution. *Sherwood*, 394 F.3d at 1203.

Much like California and Wisconsin voluntary assignment law, federal bankruptcy law gives the trustee the power to avoid preferential transfers.[2] The Ninth Circuit reasoned that if a state assignee, pursuant to California's preference provision, recovers a preferential transfer and distributes its proceeds to the other creditors, that would "preclude a federal trustee from recovering the same sum under the federal preference statute if a federal bankruptcy proceeding is begun." *Id*. at 1204. Thus, the Ninth Circuit concluded, the state preference provision impermissibly interfered with the federal bankruptcy code. *Id*.

---

[2] The trustee may avoid preferential payments either under 11 U.S.C. § 547(b), or under state law incorporated pursuant to section 544(b). Under section 544(b) the trustee can avoid preferences only to the extent such transfers could be voided by an unsecured creditor.

4

This Court finds the Ninth Circuit's reasoning unpersuasive. It does not follow that simply because a state receiver or assignee under a state preference provision can collect a preference payment like a federal bankruptcy trustee, a state preference provision interferes with the federal goal of equitable distribution. Rather, as the Supreme Court has remarked relative to voluntary assignment laws, preference provisions act "quite in harmony with the purposes of the federal [bankruptcy] Act." *Pobreslo*, 287 U.S. at 526. Preference provisions merely effectuate the purpose of voluntary assignment laws, which is "to protect creditors against each other and . . . assure equality of distribution unaffected by any requirement or condition in respect of discharge." *Id*.

The Wisconsin preference provision is substantially similar to the federal preference transfer statute. *Compare* 11 U.S.C. § 547(b), *with* Wis. Stat. § 128.07. Both the federal and state preference provisions serve to ensure equitable distribution, which includes preventing a race by creditors to recover assets prior to insolvency. Thus, this Court fails to see how a preference recovery scheme that assists in equitable distribution to creditors somehow interferes with the federal bankruptcy law's identical goal of equitable distribution.

In addition, the *Sherwood* dissent correctly posits that the reasons to strike down a preference provision are equally applicable to voluntary assignment laws generally. The court in *Sherwood* explained that voluntary assignment laws, unlike preference provisions, do not create new rights for the assignee or receiver that do not already belong to the debtor or creditor. *Id*. at 1205 n. 8. Yet, the powers granted to an assignee in

5

voluntary assignment laws necessarily are greater than any one creditor or debtor. *Id*. at 1206 n. 1 (Nelson, J., dissenting.) A state assignee or receiver, even if there is no preference provision, exercises powers on behalf of all creditors, "thus exercising powers greater than any one creditor could exercise." *Id*. Accordingly, this Court agrees with the *Sherwood* dissent that the arguments to invalidate a preference provision are equally applicable to voluntary assignment laws, generally. *See id*. The Supreme Court has held that voluntary assignment laws generally act in harmony with the purpose of the federal bankruptcy code to equitably distribute assets to competing creditors. *See, e.g. Pobreslo*, 287 U.S. at 526. Preference provisions and voluntary assignment laws merely effectuate that purpose, and are perfectly legitimate.

PCC argues alternatively that, even if preference statutes generally are not preempted by federal bankruptcy law, Wisconsin's provision in particular is preempted because the federal bankruptcy provision allows a trustee to recover a preferential payment made 90 days prior to the commencement of bankruptcy, while the Wisconsin preferential statute allows a receiver to avoid a preference transfer within 120 days. *Compare* 11 U.S.C. § 547(b) (4), *with* Wis. Stat. § 128.07(b)(2). This argument is unavailing. "Conflict preemption" occurs when compliance with both federal and state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Gade* 505 U.S. at 98 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). A receiver's ability to recover a preference payment within 120 days, rather than 90 days, is not a substantial

6

difference that is an obstacle to accomplishing the federal bankruptcy goal of equitable distribution.

Accordingly, this Court will not strike down Wisconsin's preference provision that is the basis of APP's lawsuit. PCC's motion to dismiss is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendant's Motion to Dismiss (Docket No. 6) is **DENIED**.

Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **October 31, 2006,** at **9:30 a.m.** (Central Time). The Court will initiate the call.

The purpose of the conference call will be to establish a Scheduling Order which will limit the time:

1. to join other parties and to amend the pleadings;

2. to file and hear motions;

3. to complete discovery; and

4. to disclose experts.

The Scheduling order may also include:

5. the date or dates for subsequent Rule 16 conferences, a final pretrial conference and trial; and

7

6. any other matters appropriate in the circumstances of the case.

The time limitations set forth in the Scheduling Order shall not be modified except upon showing of good cause and by leave of the Court. Fed. R. Civ. P. 16(b)(6).

Special attention should be given to Rule 26(f), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rule 26 also mandates that the parties, within fourteen (14) days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in subsections (1)-(4) of Rule 26(f), the Court requests that the proposed discovery plan submitted by the parties include a very brief statement of the nature of the case, lasting no more than several sentences.

Dated at Milwaukee, Wisconsin this 24th day of August, 2006.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**